IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**ROBERT WILLIS, JR.**                                                           **PLAINTIFF**

v.                                        No. 5:12-cv-101-DPM

**SHELTER MUTUAL INSURANCE COMPANY**                        **DEFENDANT**

ORDER

Willis's house burned down, so he called his insurance company. The next day, his Shelter claim-agent, Montgomery, started collecting information — including a recorded statement from Willis — and processing the claim. A few months later, Shelter sent Willis a check for $54,967.37. Though Willis's house recently appraised at $84,000.00, the parties agree that the policy limit was $62,200.00, with a $750.00 deductible. Willis says Shelter owes him the full policy value. He also says that Shelter handled the claim in bad faith, pointing to conduct he thinks was oppressive and malicious. Shelter moves for summary judgment on the bad-faith claim. *Document No. 12.* Willis moves to add a claim that Shelter tortiously interfered with his relationship with his lawyer. *Document No. 19.*

Willis has a heavy burden to create a genuine issue of material fact that

Shelter acted in bad faith. Arkansas courts are clear about what type of behavior constitutes bad faith: "dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured, carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Watkins v. Southern Farm Bureau Casualty Ins. Co.*, 2009 Ark. App. 693, at 13, 2009 WL 3400697. There must be affirmative misconduct. *Ibid.* To illustrate, the Arkansas Supreme Court found bad faith when an insurer affirmatively altered insurance records to create the appearance that the holder's coverage had lapsed. *Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29 (1984).

Arkansas Courts are likewise clear about what conduct is not bad faith: negligence, bad judgment, nightmarish red tape, hardball, and delaying investigations for months. Even an insurer's failure to provide a reason for the company's initial refusal of payment will not suffice. *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Guyer*, 2011 Ark. App. 710, 2011 WL 5562735.

The facts, viewed in Willis's favor are these:

- Montgomery called Willis and asked for a second recorded audio statement without giving a reason;

- Montgomery got between Willis and his lawyer by directing two phone calls and the claim check to Willis and not his lawyer;

- Shelter tried to settle the claim by mailing Willis a check for $54,967.37; and

- Shelter failed to pay Willis the full value of the policy.

There is contradictory testimony about the audio recordings. Willis initially said that Shelter told him the first tape "didn't come out clear." *Document No. 12-3 at 70.* But even if Montgomery didn't give Willis a reason for needing a second statement, as Willis now contends, *Document No. 16-1 at 2*, the behavior was at most rude or inconsiderate, but hardly malicious. *See, e.g., Farm Bureau Mut. Ins. Co of Arkansas, Inc. v. Guyer*, 2011 Ark. App. 710, 2011 WL 5562735.

Shelter never interfered with Willis's contractual relationship with his lawyer. To do so, Shelter had to cause a breach or termination of the relationship between Willis and his lawyer. *Walt Bennett Ford, Inc v. Pulaski County Special School District*, 274 Ark. 208 (1981). The company didn't. Willis never says otherwise. He does say he approached his lawyer days after receiving the insurance check, and letting his attorney "[take] it from there." *Document No. 12-3, at 75.* With no breach in the attorney-client relationship, there can be no interference. For this reason, as well as the others listed in Shelter's opposition to the proposed amendment asserting a tortious-

interference claim, *Document No. 21*, the new claim would be futile because it fails as a matter of law. The motion to amend is therefore denied.

Nothing suggests that Shelter tried to settle the claim simply by mailing a check. Montgomery ran the claim estimate by Willis and his lawyer a month before sending Willis the check. *Document No. 12-11.* Outside of asking where the number came from, nothing indicates Willis or his lawyer objected to the amount. And Willis's concern that the proper procedures were not followed, such as the lack of a recording, *Document No. 16 at 8*, only worked to his benefit. He got the check sooner; and that helps undermine his claim that Shelter was looking in bad faith for reasons to deny the claim. A reasonable fact finder could not conclude from this record that Shelter engaged in affirmative misconduct that was dishonest, oppressive, or malicious. Willis's breach of contract claim survives; his bad-faith claim fails.

Motion for partial summary judgment, *Document No. 12*, granted. The bad-faith claim is dismissed with prejudice. Motion to amend, *Document No. 19*, denied because a tortious-interference claim would be futile.

The Court is concerned about its subject matter jurisdiction in this diversity case. If the Court has done its math correctly, the parties have a

$6482.63 coverage dispute. A reasonable attorney's fee is in prospect. Ark. Code Ann. § 23-79-208(a)(1). Assuming the 12% penalty is too, that would add $7,374.00 to the amount in controversy ($62,200.00-$750.00 = $61,450.00 × .12). How is it possible for this case to meet the $75,000.00 (less interest and costs) threshold? 28 U.S.C. § 1332(a). Simultaneous briefs on jurisdiction due 30 November 2012.

     So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

15 November 2012